REQUESTED BY: Douglas D. Christensen Commissioner of Education
On behalf of the State Board of Education, you have requested our legal opinion on forty-five separate questions which pertain to the State Board of Education's obligations under the federal "Goals 2000: Educate America Act," 20 U.S.C. § 5801
— § 6084 (Supp. 1998), [hereinafter "Goals 2000"] and the federal "School-To-Work Opportunities Act of 1994,"20 U.S.C. § 6101 — § 6251 (Supp. 1998) [hereinafter "STW Act"]. Your questions, and our responses, are as follows:
 1. Is an application for funds legally binding? Is it considered a contract, or is a contract signed? What is the penalty for breaking a contract?
No State is required to participate in either the Goals 2000 or STW Act programs. Rather, the U.S. Congress has made funding available under both programs to those States which submit qualified grant applications to the federal government. "If a State does not apply [for the grant funding], then there is no obligation for that State to do anything. . . . [I]f a State does apply for these funds and receives them, it must develop standards for education of its own choosing and subject to its own timelines for accomplishment. No State has to have any standards certified by any entity at the national level. [What the State must have are] procedures to carry out the standards it sets for itself." H.R. Rep. No. 103-168 at 38 (1993), reprintedin 1994 U.S.C.C.A.N. 63, 66. Under both the Goals 2000 and STW Act programs, the State of Nebraska — either through the Nebraska Department of Education or through the Governor — elects to submit applications for grant funds in conformance with federal statutory criteria. See 20 U.S.C. § 5885 (state applications for Goals 2000 funds); 20 U.S.C. § 6123 (STW Act state development grant application requirements); 20 U.S.C. § 6143 (STW Act state implementation grant application requirements).
In a broad sense, these grant applications would likely be deemed as "contracts" between the U.S. and state governments. Generally, a contract is defined as "[a]n agreement between two or more persons which creates an obligation to do or not to do a particular thing. Its essentials are competent parties, subject matter jurisdiction, a legal consideration, mutuality of agreement, and mutuality of obligation." Black's Law Dictionary, 5th ed., at 291-292. When either party to a contract breaches the contract's terms, the penalty for the breach is usually dictated within the contract.
Terms and conditions placed upon states receiving either Goals 2000 or STW Act grants are set forth in regulations issued by the federal government. See 34 C.F.R. § 299.2 (1998) (noting that 34 C.F.R. Part 80 applies to all programs under Title III of the Goals 2000 statute and to all "Elementary and Secondary Education Act" programs). With regard to enforcement of these federal grants, the regulations provide:
 If a grantee or subgrantee materially fails to comply with any term of an award, whether stated in a Federal statute or regulation, an assurance, in a state plan or application, a notice of award, or elsewhere, the awarding agency may take one or more of the following actions as appropriate to the circumstances:
 (1) Temporarily withhold cash payments pending correction of the deficiency by the grantee . . . or more severe enforcement action by the awarding agency;
 (2) Disallow (that is, deny both use of funds and the matching credit for) all or part of the cost of the activity or action not in compliance;
 (3) Wholly or partially suspend or terminate the current award for the grantee's program;
(4) Withhold further awards . . ., or
(5) Take other remedies that may be legally available.
34 C.F.R. § 80.43 (1998).
 2. Is it considered fraud to enter a contract or agreement with the intention of not complying with the requirements of the law (GOALS 2000 and the School-to-Work Opportunities Act (STWOA)?
The term "fraud" is a very broad word which may encompass many civil and criminal acts. The term comprises all intentional "acts, omissions, and concealments involving a breach of a legal or equitable duty and resulting in damage to another. . . . Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantage to the one party, or to cause an inconvenience or loss to the other." Black's Law Dictionary, 5th ed. at 594-595. Pursuant to both the Goals 2000 and the STW Act statutes, a condition of receiving federal funds is a State's compliance with required elements of the programs.
 3. Is the State required to return all or a portion of the money if a determination is made to "quit at any time"?
Federal regulations governing both the Goals 2000 and STW Act grant programs provide that, unless terminated by the federal government for cause, grant awards may be terminated either by the federal government with a State's consent or by a State upon proper written notice. 34 C.F.R. § 80.44 (1998). When the grants are terminated, governing regulations also provide that "[t]he grantee must immediately refund to the Federal agency any balance of unobligated (unencumbered) cash advanced that is not authorized to be retained for use on other grants."34 C.F.R. § 80.50 (1998). The amount of any grant funds that a State has spent, but was not ultimately entitled to receive, are considered debts to the U.S. government. 34 C.F.R. § 80.52
(1998). According to correspondence to the NDE from the U.S. Department of Education, "[f]unds [which] the state spent during the time of participation need not be returned, provided they were expended consistent with the provisions of [the] Goals 2000 [statute] and the regulations that apply to expenditure of all departmental funds." (Letter from the U.S. Department of Education, Director, Goals 2000, dated June 3, 1997).
 4. What mandates of the GOALS 2000 law does the State have to comply with? What mandates of the School-to-Work Opportunities Act does the State have to comply with?
The specific requirements that a State must comply with once it has submitted grant applications under the Goals 2000 and the STW Act statutes are too numerous to individually set forth. The Goals 2000 statutes require a participating state to develop a state improvement plan which must include specified required elements and which may include specified optional elements. See
20 U.S.C. § 5886. The statutes also place directives and restrictions upon a participating state's use of grant funds. 20 U.S.C. § 5888. Likewise, the STW Act statutes require a participating state to develop a state plan which must include specified required elements. 20 U.S.C. § 6143(d). Any state seeking grant funding under both the Goals 2000 and the STW Act programs is specifically authorized to submit a single grant application which coordinates the requirements of both federal laws. 20 U.S.C. § 6143(c); 20 U.S.C. § 6103(3). Upon the request of a participating state, many of the statutorily-required state plan elements under both statutes may be waived. See 20 U.S.C. § 5891 (Goals 2000 waiver provisions); 20 U.S.C. § 6211 — § 6215 (STW Act waiver provisions).
 5. Does the State have to use its own funds to comply with GOALS 2000? With the School-To-Work Opportunities Act?
"Nothing in [the Goals 2000 statutes] shall be construed to authorize an officer or employee of the Federal Government to mandate, direct, or control a State, local educational agency, or a school's curriculum, program of instruction, or allocation of State or local resources or mandate a State or any subdivision thereof to spend any funds or incur any costs not paid for under this [Act]." 20 U.S.C. § 5898. An identical provision is included in the STW Act. See 20 U.S.C. § 6234. Under the STW Act, however, a state may apply for either a one-time "development" grant, not to exceed $1,000,000, or a one-time "implementation" grant, which shall be subject to annual federal approval and the payment of which shall not exceed 5 federal fiscal years. See 20 U.S.C. § 6121 — § 6127 (STW Act development grants); 20 U.S.C. § 6141 — § 6148 (STW Act implementation grants). Unless further authorized by Congress, the STW Act will terminate, or sunset, on October 1, 2001. 20 U.S.C. § 6251. Thus, if a participating state desired to continue a school-to-work program beyond that date, then no federal funds are currently guaranteed for such purpose.
 6. The following questions concerning specific portions of GOALS 2000 contain the word "will." Legally, does the verb "will" have the mandatory sense of "shall" or "must"? To what extent, if any, is a State or school system which receives funding through GOALS 2000 mandated to fulfill requirements outlined in the following sections?
In verb form, the term "will" could be used as a command (e.g., "in order to receive grant funds, the State will do a task"). See Webster's Ninth New Collegiate Dictionary at 1350. Each of the subquestions listed below inquire about Congressional use of the term "will" in 20 U.S.C. § 5812. In that section, Congress has declared and set forth national education goals in eight specific areas. In each of the pertinent sections, Congress has utilized the verb "will" to express futurity (i.e., by the year 2000, each of the goals will be realized). While the ultimate purpose of the Goals 2000 statutes "is to provide a framework for meeting the National Education Goals established [by the Act]," 20 U.S.C. § 5801, no participating state is mandated to actually fulfill the specified goals. The Goals 2000 statutes require that a participating state adopt academic content standards. The Goals 2000 statutes presume that students' mastery of those standards would achieve a realization of the national education goals.
 a. Section 102(1)(B)(i) [20 U.S.C. § 5812(1)(B)(i)]: What does the State have to do to comply with or demonstrate that "All children will have access to . . . preschool programs?"
See response to question # 6.
 b. Section 102(1)(B)(ii) [20 U.S.C. § 5812(1)(B)(ii)]: What does the State have to do to demonstrate that every parent in the United States is devoting time each day and has access to training and support as specified?
See response to question # 6.
 c. Section 102(1)(B)(iii) [20 U.S.C. § 5812(1)(B)(iii)]: What does the State have to do to demonstrate children are receiving "nutrition . . . health care needed?"
See response to question # 6.
 d. Section 102(3)(B)(iii) [20 U.S.C. § 5812(3)(B)(iii)]: What does the State have to do to demonstrate that all students are involved in the manner listed? Is community service mandated for all students? Does the phrase "all students" limit the activities to public school students only?
See response to question # 6. The phrase "all students" is a term which is defined, for purposes of pertinent sections of the Goals 2000 program, to mean
 students or children from a broad range of backgrounds and circumstances, including disadvantaged students and children, students or children with diverse, racial, ethnic, and cultural backgrounds, American Indians, American Native Hawaiians, students or children with disabilities, students or children with limited-English proficiency, school-aged students or children who have dropped out of school, migratory students or children, and academically talented students and children.
20 U.S.C. § 5802(a)(1). With regard to expenditure of Goals 2000 program funds, Congress has specified that, except for making copies of any state-adopted content standards available to requesting private entities, "nothing in [the Goals 2000 statutes] shall be construed to authorize the use of funds under Subchapter III [State and local systemic improvements] to directly or indirectly benefit any school other than a public school." 20 U.S.C. § 6066.
 7. Section 301(7) [20 U.S.C. § 5881(7)]: What does the State have to do to demonstrate that it will or is incorporating "strategies for providing all students and families with coordinated access to . . . social services, health care, nutrition, and early childhood education, and child care . . .?" Are all schools which receive funds required to link with or coordinate and provide all students and families with access to social services, health care, early childhood education, and child care? In Nebraska, what provisions are made for parental rights, parental notification and permission and the students' rights to privacy?
The statute at issue in this question expresses Congress's finding that "State and local educational improvement efforts must incorporate strategies for providing all students and families with coordinated access to appropriate social services, health care, nutrition, and early childhood education, and child care to remove preventable barriers to learning and enhance school readiness for all students." 20 U.S.C. § 5881(7). This is one of 16 specific findings of the Congress to support its enactment of the "State and Local Systemic Improvement" subchapter of the Goals 2000 Act. See H.R. Report No. 103-168 at 52, 1994 U.S.C.C.A.N. at 80. Neither State nor local educational agencies are bound by the provisions of this section. Pursuant, however, to 20 U.S.C. § 5886(f)(2), a participating state's improvement plan must include a description of strategies for implementing the state plan, "including strategies such as — increasing the access of all students to social services, health care, nutrition, related services, and child care services . . . ."
The Goals 2000 Act does not contain precise requirements for participating states to demonstrate these strategies in their state improvement plans. Therefore, participating states have been given broad latitude for complying with this element of the federal Act. Any parental or student rights to privacy which emanate under Nebraska law would not be usurped by the State's acceptance of Goals 2000 program grant funds. See 20 U.S.C. § 5899(b) (reaffirmation by Congress that the responsibility and control of education is reserved to the States and local school systems and that nothing in the Goals 2000 Act reduces, modifies, or undercuts State and local responsibility for education); 20 U.S.C. § 5900 (a) (expressly prohibiting the federal government from requiring the provision of school-based health clinics or any other health or social service).
 8. Section 306 [20 U.S.C. § 5886]: How does the State demonstrate development and implementation of the State improvement plan? Once the State Improvement Plan has been approved by the Secretary or other authority specified in GOALS 2000, can change be made at will by the State or must a waiver be sought by the Secretary or other authority? To what extent is the work [sic] "implement" legally binding?
The Goals 2000 statutes require, in part, that a participating state develop a "State improvement plan" which plan shall include "strategies for meeting the National Education Goals by improving teaching and learning and students' mastery of basic and advanced skills in core content areas. . . ." 20 U.S.C. § 5886 (c). Required elements of a state improvement plan are that it contain each of the following:
 • a process for developing or adopting state content standards[1] and state student performance standards for all students (20 U.S.C. § 5886(c)(1)(A));
 • a process for developing and implementing state assessments[2] (20 U.S.C. § 5886(c)(1)(B));
 • a process for aligning state or local curricula, instructional materials and state assessments with the adopted content standards (20 U.S.C. § 5886(c)(1)(C));
 • a process for familiarizing teachers with the state-adopted standards and assessments (20 U.S.C. § 5886(c)(1)(D));
 • strategies for improved governance, accountability, and management of the State's educational system (20 U.S.C. § 5886(e));
 • strategies for how the State educational agency will involve parents and community representatives in designing and implementing the state plan (20 U.S.C. § 5886(f));
 • strategies for providing all state students the opportunity to meet adopted state standards (20 U.S.C. § 5886(g));
 • strategies for "ensuring that comprehensive, systemic reform is promoted from the bottom up in communities, local educational agencies, and schools" (20 U.S.C. § 5886(h));
 • strategies for assisting local educational agencies and schools in serving school-aged children who have dropped out of school (20 U.S.C. § 5886(i));
 • specific benchmarks and timelines for measuring improved student performance (20 U.S.C. § 5886(k));
 • strategies for integrating academic and vocational instruction (20 U.S.C. § 5886(l));
 • a description of how the State plans to monitor progress in implementing state content standards (20 U.S.C. § 5886(m)(1));
 • a description of how the State plans, procedurally, to improve local schools that are not meeting the state-adopted content standards (20 U.S.C. § 5886(m)(2)); and
 • if the State has accepted STW Act grant funds, a description of how school-to-work programs developed by the State will be incorporated into other reform efforts (20 U.S.C. § 5886(j)).
In lieu of submitting a "state improvement plan" with these elements, a participating state may make an alternate submission in accordance with the provisions set forth in 20 U.S.C. § 5886(4)).
Nebraska demonstrates compliance with these requirements by developing and submitting a plan to the U.S. Secretary of Education. The Secretary of Education is then required to approve a qualified state improvement plan "not later than 2 years after the date the State educational agency receives its first [funding] allotment. . . ." 20 U.S.C. § 5886(n)(2). The Goals 2000 statutes provide that any "major amendment" to a state improvement plan must be submitted to the U.S. Secretary of Education for review and approval. 20 U.S.C. § 5886(p).
The term "implement" is not expressly defined in the Goals 2000 statutes. Generally, the word means to carry out, accomplish, or "to give practical effect to and ensure actual fulfillment by concrete measures." Webster's Ninth New Collegiate Dictionary at 604. The term is legally binding to the extent that it is used in any portion of the Goals 2000 statutes which address actual state requirements. We note that the term is also used frequently within the Goals 2000 statutes in the context of guideline, suggestive, or optional provisions of the Act.
 9. Section 306(c)(1)(A) [20 U.S.C. § 5886(c)(1)(A)] refers to "a process for developing or adopting. . . ." Does the "or" separate the words "developing" and "adopting" as two separate items or does it simply further clarify the task that is to be completed? Is the implementation of State content standards and State student performance standards mandated by GOALS 2000? By the Carl D. Perkins Vocational and Applied Technology Act? By the School-To-Work Opportunities Act?
Pursuant to 20 U.S.C. § 5886(c)(1)(A), a participating state's improvement plan must include "a process for developing or adopting State content standards and State student performance standards for all students. . . ." Taken only in the context of this particular subsection of the Goals 2000 statutes, use of the term "or" could mean that a state plan include either a process for developing state content standards or a process for adopting state content standards. See H.R. Report No. 103-168 at 46, 1994 U.S.C.C.A.N. at 74 (reflecting Congressional intent that each participating state's plan must include either the "development or adoption of content, student performance, and opportunity to learn standards" and noting that the legislation provided for "the development or adoptions of challenging content and student performance standards").
The Goals 2000 statutes require that a participating state implement its improvement plan. 20 U.S.C. § 5886(a). Under the state improvement plan, a participating state must have "developed" or "adopted" state content standards and state student performance standards. 20 U.S.C. § 5886(c)(1). The statute does not mandate the manner in which a state may "develop" or "adopt" or "implement" the standards or the student assessments. Therefore, participating states have wide latitude as to the method in which their particular state improvement plan will be effected.
We have been provided with a copy of correspondence dated June 3, 1997, addressed to the Nebraska Department of Education from the Director of the Goals 2000 program within the office of the U.S. Secretary of Education. Pertinent to your question, the federal government official noted:
 Under Goals 2000, each state develops and implements a plan that best meets the needs of its students, teachers, and communities. In accepting Goals 2000 funds, a state agrees to develop or adopt challenging content and student performance standards for all children, and assessments aligned with those standards. . . . Within the general statutory framework, each state determines how its standards and assessments will be developed and implemented. . . . [T]he legislation does not require there to be a mandatory single set of content or performance standards that must be applied uniformly to every school district in the state. A state may choose to develop or adopt model standards or criteria against which locally-developed standards would be measured and approved. Similarly, a state may approve locally-developed assessments that are aligned with such standards, so long as the assessments meet the other requirements for assessments [contained] in [the] Goals 2000 statutes.[3]
Finally, coordination provisions are contained in both the "Carl D. Perkins Vocational Educational Act," and the STW Act which cross-reference the state plan development and implementation requirements of the Goals 2000 statutes. Therefore, the only pertinent requirements placed upon participating states would emanate from the Goals 2000 statutes (discussed above).
 10. Section 306(i) [20 U.S.C. § 5886(i)]: By the School-to-Work Opportunities Act?
See response to question # 9.
 11. Section 306(j) [20 U.S.C. § 5886(j)]: After reviewing the State's school-to-work plan as referenced herein, to what extent are the State and the local districts required to "provide career guidance, the integration of academic and vocational education, and work-based learning?"
If a participating state has also applied for, and received, grant funding under the STW Act, then that state's Goals 2000 state improvement plan must include a description of how its school-to-work program will be incorporated into other state school reform efforts. 20 U.S.C. § 5886(j). "In particular, the State improvement plan shall include a description of how secondary schools will be modified in order to provide career guidance, the integration of academic and vocational education, and work-based learning, if such programs are proposed in theState's school-to-work plan." Id. (emphasis supplied). We have not been supplied with a Nebraska "school-to-work" plan, if such a plan has been developed. However, if no school-to-work plan has been adopted — or, if career guidance and work-based learning programs have not been addressed in a developed plan, then these items need not be addressed in the Goals 2000 state improvement plan. Section 5886(j) requires that the State Board of Education, in developing a state improvement plan, describe how career and vocational education will be addressed in statewide school reform efforts.
 12. Section 306(k) [20 U.S.C. § 5886(k)]: If the State is failing to meet "specific benchmarks of improved student performance and of progress in implementing such plan, and timelines . . . including the elements described in subsections (c) through (j) . . .," do sanctions exist? If so, to what degree? Must waivers be requested and from whom?
Any failure by the State of Nebraska to comply with terms of the Goals 2000 program requirements could be addressed by the federal government in any manner specified in our response to question # 1. Waivers of the Goals 2000 statutory and regulatory requirements may be requested by the State of Nebraska from the U.S. Secretary of Education as specified in 20 U.S.C. § 5891.
 13. Section 306(m) [20 U.S.C. § 5886(m)]: What is the legal definition of "accountability" as used herein? What procedures are "consistent with State law, to improve schools that are not meeting the State content standards voluntarily adopted by the State? Does this wording imply that schools are "mandated" to comply with State adopted standards in cases where the school does not adopt the State standards?
Section 20 U.S.C. § 5886(m) requires that a participating state's improvement plan describe 1) how progress towards implementing the plan will be monitored; and 2) "procedures the State plans to use, consistent with State law, to improve schools that are not meeting the State content standards. . . ." The term "accountability" is not used as a requirement in this section of the Goals 2000 Act; rather, it is merely utilized as a subtitle heading. Under the Goals 2000 statutes, local school districts are not necessarily required to "adopt" the state content standards which have been adopted by the State Board[4]; however, the local districts must be able to demonstrate, via the state-chosen student assessment methods, that their students can master the state standards. The manner in which local school districts must comply with this requirement is left to the State Board's discretion as an element of its state improvement plan.
 14. Section 307 [20 U.S.C. § 5887]: To what extent is the State mandated to implement the State improvement plan in order to continue receiving funds the second through fifth years? If the State did not implement the State improvement plan, what penalties would be implemented? What is considered to be "substantial progress?" What, if any, obligations do local districts have if they are receiving funds?
The Goals 2000 statutes provide for funding in the first year after enactment of the law for grants to states for the development of state improvement plans. 20 U.S.C. § 5885(b). Subsequently, in the second through fifth years after the federal law's enactment, states may apply for grants to implement their state improvement plans. 20 U.S.C. § 5885(c). It is our understanding that the State of Nebraska is currently in its fourth year of funding under the Goals 2000 program. By accepting Goals 2000 grant funds, the State must comply with all required elements of the federal program. If Nebraska either failed, or elected not, to implement the state improvement plan which it has submitted to the U.S. Secretary of Education, then the federal government should be notified of the State's intention not to further participate in the program in accordance with the procedures set forth in 34 C.F.R. Part 80. Any penalties for an intentional failure to implement the state improvement plan could be assessed against Nebraska as discussed in response to question # 1. Please see our prior response to question # 3 with regard to monetary consequences which might arise in this circumstance.
In part, your question asks what the phrase "substantial progress" means with respect to the statutory requirement that the U.S. Secretary of Education review state improvement plans to determine, for funding in years 2 through 5 of the program, that a participating state has made "substantial progress in developing its State improvement plan and will implement such plan not later than the end of the second year of participation." 20 U.S.C. § 5887(b)(1)(B). While the phrase "substantial progress" is not specifically defined in governing statutes or regulations, we note that, as Nebraska is in its fourth year of Goals 2000 program funding, the U.S. Secretary of Education has already made a determination that Nebraska has made substantial progress in implementing its state plan.
Finally, you inquire of the nature of obligations placed upon local school districts which receive subgrants from the State Board of Education from the Goals 2000 program funds. The local school districts are required to comply with any of the directives set forth in 20 U.S.C. § 5889 and with any conditions placed upon the district's receipt of the subgrant by the State Board of Education.
 15. Section 308 [20 U.S.C. § 5888]: To what extent are local districts who receive funds required to comply with the State improvement plan? What does the local district have to do to demonstrate compliance with activities specified herein?
See response to question # 14.
 16. Section 402(a)(2) [20 U.S.C. § 5912(a)(2)(J)]: By receiving funds, is the State mandated or required to "establish, expand, or operate [sic] Parents as Teachers program. . . .?"
No. Section 5912 of the Goals 2000 statutes allows nonprofit organizations to apply directly to the federal government for funding to establish a parent information and resource center. In its grant application, the organization must include an assurance that it will "use part of the funds received under [the grant] to establish, expand, or operate Parents as Teachers programs or Home Instruction for Preschool Youngsters programs." 20 U.S.C. § 5912(a)(2)(J). This section has absolutely no application to the State Board of Education.
 17. Section 405(2)(A) [20 U.S.C. § 5915(2)(A)]: The PAT program is an early intervention program for birth through age five. Are the State and/or participating school districts mandated to offer intervention [sic] birth through age five? What risk factors are identified to determine need? Who identifies those risk factors?
The PAT, or "Parents As Teachers," program "means a voluntary early childhood parent education program that" meets specific statutorily-prescribed criteria. 20 U.S.C. § 5915 (2). As noted in response to question # 16, this section has absolutely no application to the State Board of Education. Rather, the requirements of this, and related statutes, establish mandates upon nonprofit organizations which might apply for grant funds to establish parent resource and information centers.
Sincerely,
 DON STENBERG Attorney General
 Lauren L. Hill Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General
[1] The Goals 2000 Act defines "content standards" to mean "broad descriptions of the knowledge and skills students should acquire in a particular subject area."20 U.S.C. § 5802(a)(4). On August 14, 1998, the State Board of Education formally adopted academic content standards in the areas of mathematics, reading, social studies, and science (Title 94, Nebraska Administrative Code, Chapters 1-4). As those standards are in the process of being formally reviewed in accordance with the regulation approval requirements of Nebraska's "Administrative Procedure Act," they are not yet effective as binding regulations.
[2] The Goals 2000 Act defines "state assessments" to mean "measures of student performance which include at least 1 instrument of evaluation, and may include other measures of student performance, for a specific purpose and use which are intended to evaluate the progress of all students in the State toward learning the material in State content standards in 1 or more subject areas." 20 U.S.C. § 5802(a)(10). We note that while the Goals 2000 statutes contemplate that a participating state, for purposes of compliance with the Goals 2000 program, may adopt or utilize multiple "assessments," the Nebraska Legislature, in 1998, adopted legislation which required the State Board of Education to adopt and promulgate the academic standards discussed in note 1. See 1998 Neb. Laws, LB 1228, § 2.
With regard to state assessments to measure participating school districts' performance measured against the state standards, the Legislature has required the State Board of Education to "implement a statewide assessment program for students in a selected grade in each of the grade ranges four through six, seven through nine, and ten through twelve each fall semester beginning with the fall semester of 2000." 1998 Neb. Laws, LB 1228, § 4(1). Under the new state law, the State Board's assessment program "shall consist of one assessment
purchased from an assessment service for each selected grade which tests students in the areas of mathematics, reading, science, and social studies, plus one writing assessment. . . ."Id. (emphasis supplied).
[3] As previously noted, the State Board of Education, on August 14, 1998, formally adopted state academic content standards in certain areas. Given the federal statutes' lack of specificity as to what constitutes "adoption," it appears that the Board's adoption of the standards satisfies that Goals 2000 criterion.
[4] Separate and apart from the Goals 2000 statutes, the Nebraska Legislature, in 1998, enacted a requirement that all school districts which seek funding from the Education Innovation Fund (which is comprised of a statutorily-designated percentage of state lottery proceeds) "adopt" the academic contents standards contained in Title 94 of the Nebraska Administrative Code. The State Board has included in 92 NAC 89 a definition of what constitutes a local school district's "adoption" of the state content standards.